

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

**NOV 1 7 2017**

CLERK, U.S. DISTRICT COURT

By_____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| LIFE PARTNERS HOLDINGS, INC., | § | Case No. 15-40289-RFN-11 |
| | § | Chapter 11 |
| Debtor, | § | |
| | § | |
| ———————————————— | § | |
| | § | |
| LIFE PARTNERS CREDITORS' TRUST | § | Adversary No. 15-04110-rfn |
| AND ALAN M. JACOBS, AS TRUSTEE | § | |
| FOR LIFE PARTNERS CREDITORS' | § | |
| TRUST, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | District Court Case |
| VS. | § | No. 4:16-CV-299-A |
| | § | |
| AMERICAN SAFE RETIREMENTS, | § | |
| LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the multiple motions[1] filed by defendants in the above-captioned action seeking dismissal of the claims made by plaintiffs, Life Partners Creditors' Trust and Alan M. Jacobs, as Trustee for Life Partners Creditors' Trust, in their second amended complaint ("Complaint").[2] After having considered such motions, the allegations of the Complaint,

---

[1]Several of the motions to dismiss were filed in Adversary Case No. 15-4110. <u>See</u> Adv. Docs. 171, 172, 173, 184, 185, 197, & 198. Another was filed in this Case No. 4:16-CV-299-A after withdrawal of the reference. <u>See</u> Docs. 12, 13.

The "Adv. Doc. __" references are to the numbers assigned to the referenced items on the bankruptcy court docket of Adversary No. 15-04110.

The "Doc. __" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:16-CV-299-A.

[2]Adv. Doc. 162.

plaintiffs' omnibus response to the motions to dismiss,[3] the report and recommendation of the bankruptcy judge on October 18, 2017,[4] objections to the report and recommendation,[5] plaintiffs' responses to the objections of certain defendants,[6] and pertinent legal authorities, the court has concluded that all claims asserted by plaintiffs in the Complaint should be dismissed.[7]

## I.

### Identities of the Parties and the Nature of the Claims Asserted by Plaintiffs in the Complaint

Plaintiffs are the Life Partners Creditors' Trust and Alan M. Jacobs, as trustee for that trust. The background that led to the creation of the trust, the designation of Alan M. Jacobs as trustee, and the contentions of plaintiffs concerning standing to make the claims they are asserting in this action are described in the Complaint. Adv. Doc. 162 at 11-13, ¶¶ 49-59. On those same subjects, the court makes reference to the Motion for Leave to: (1) Substitute Plaintiffs; and (2) Substitute Plaintiff's Counsel

---

[3]Docs. 18, 19, 20.

[4]Doc. 32.

[5]Docs. 33-36. (Doc. 35 replaces Doc. 33.)

[6]Doc. 37, 38.

[7]The court is satisfied that dismissal may be granted on behalf of similarly-situated defendants who have not filed their own motions to dismiss. Taylor v. Acxiom Corp., 612 F.3d 325, 340 (5th Cir. 2010); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981); Clinton Cmty. Hosp. Corp. v. S. Md. Med. Ctr., 374 F. Supp. 450, 453-54 (D. Md. 1974), aff'd, 510 F.2d 1037 (4th Cir. 1975).

filed February 14, 2017, in Adversary No. 15-04110, and its related February 16, 2017, order. Adv. Docs. 159, 160.

The defendants are collectively referred to in the Complaint as "Defendant Master Licensees." Adv. Doc. 162 at 2. They are listed in paragraphs 9-46 of the Complaint.[8] Id. at 5-10. But, plaintiffs also say that "[i]n this particular suit, the Defendants are Life Partners' Referring Licensees," which they further describe in a footnote:

> Life Partners designated certain licensees as "Master Licensees" who recruited other Licensees, referred to as "Referring Licensees." Life Partners also had a designation of "Sub-Master Licensee" for certain sales agents who, upon information and belief, acted in the same manner and pursuant to the same terms as Master Licensees. The term Master Licensee, as used herein, also includes Sub-Master Licensees. Master Licensees and Referring Licensee are collectively referred to herein as Licensees.

Id. at 4, ¶ 4 & n.1. By these impossibly circular definitions, as noted throughout this memorandum opinion and order, it appears that plaintiffs are asserting claims against persons who are not parties to this action.

Plaintiffs alleged in the Introduction of the Complaint that the "lawsuit seeks to recover commissions paid to the Defendants by the debtors in the above-referenced bankruptcy proceedings" and "damages suffered by investors who assigned their claims to

---

[8]The claims against one of the defendants, Achim Reinhart d/b/a Lifeset TBB were severed and made the subject of a separate civil action, No. 4:17-CV-576-A, Doc. 31, which has been resolved.

the Creditors Trust." Id. at 2, ¶ 1. The claims asserted in the Complaint are characterized as either "Estate Claims," which are for "(1) fraudulent transfers under the Texas Uniform Fraudulent Transfer Act and 11 U.S.C. § 548; (2) breach of contract; and (3) preference claims under 11 U.S.C. § 547 and various disallowance claims under 11 U.S.C. §§ 502 and 510," or "Investor Claims" or "Investor Assigned Claims,"[9] which are for "negligent misrepresentation; (2) breach of the Texas Securities Act based upon the sale of unregistered securities by unlicensed brokers; (3) for rescission pursuant to the TSA; and (4) for breach of fiduciary duty." Id. at 4, ¶¶ 6-7. The assignments of the claims to plaintiffs were alleged to have been accomplished by, or pursuant to, the bankruptcy plan that was confirmed. Id. at 4, ¶ 5.

The dollar amount of the recovery plaintiffs are seeking from each defendant is not alleged in the Complaint. The Complaint does say that all "Referring Licensees" received in excess of $102 million in commissions and caused damages to assigning investors far exceeding those commissions. Id. at 4, ¶ 4. As noted, the same paragraph says that defendants are "Referring Licensees," whereas the preamble to the Complaint refers to defendants collectively as "Master Licensees." Id. at

---

[9]Adv. Doc. 162 at 51.

4

1. And, to add to the confusion, plaintiffs later plead that "the Defendant Licensees received over $48 million in commissions and fees." Id. at 30, ¶ 116. Plaintiffs also seek to impose a constructive trust against defendants. Id. at 53-54, ¶¶ 226-28. Although it is not clear, it appears that the res of the trust is to be the fees and commissions defendants received from debtors. Id., ¶¶ 227-28.

Plaintiffs described the Estate Claims they are asserting as follows:

> Count 1 asserts actual fraudulent transfer claims against all Licensees shown on Exhibit 4 to the Complaint[10] based on section 24.005(a)(1) of the Texas Business and Commerce Code through 11 U.S.C. § 544. Adv. Doc. 162 at 42-45, ¶¶ 152-63.

> Count 2 asserts constructive fraudulent transfer claims based on section 24.005(a)(2) of the Texas Business and Commerce Code through 11 U.S.C. § 544, again brought against all Licensees shown on Exhibit 4. Id. at 45-47, ¶¶164-76.

---

[10]Exhibit 4 appears to name more than 825 persons, not just the thirty-eight named as defendants in this lawsuit. Further, Exhibit 4 is described as "a true and correct copy of the annual total commissions received by the Defendant Licensees from 2008 through February 2015." Adv. Doc. 162 at 30-31, ¶ 116. The term "Defendant Licensees" is not defined. And, Count 1 seeks to avoid transfers made "in the form of fees and commissions," Adv. Doc. 162 at 42, ¶ 153, but Exhibit 4 purports to list only commissions. The distinction, if any, between fees and commissions is thoroughly muddled by the explanation given in the Complaint. Id. at 34-35, ¶ 128.

Count 3 asserts actual fraudulent transfers against certain Licensees as contemplated by 11 U.S.C. §548(a)(1)(A). Id. at 47, ¶¶ 177-81.

Count 4 asserts constructive fraudulent transfer claims against certain Licensees as contemplated by 11 U.S.C. § 548(a)(1)(B). Id. at 47-48, ¶¶ 182-89.

Count 5 asserts preference claims brought pursuant to 11 U.S.C. § 547 against certain Licensees shown on Exhibit 4. Id. at 48, ¶¶ 190-96.

Count 6 asserts claims against all Licensees for recovery of all avoided transfers as authorized by 11 U.S.C. § 550. Id. at 48-49, ¶¶ 197-99.

Count 7 asserts breach of contract claims against all Licensees. Id. at 49-50, ¶¶ 200-05. The court's understanding is that plaintiffs are abandoning their breach of contract claims. Doc. 32 at 17-18.

Count 8 asserts equitable subordination claims by which plaintiffs seek to cause all claims of all Licensees to be equitably subordinated as contemplated by 11 U.S.C. § 510(c). Adv. Doc. 162 at 50, ¶¶ 206-09.

Count 9 seeks disallowance of all claims of all Licensees pursuant to the authority of 11 U.S.C. § 502(d). Id., ¶¶ 210-11.

The "Investor Assigned Claims" alleged by plaintiffs are as follows:

Count 10 asserts negligent misrepresentation claims against certain Licensees.[11] Id. at 51-52, ¶¶ 212-15.

Count 11 asserts claims against certain Licensees for breach of the Texas Securities Act. Id. at 52, ¶¶ 216-20.

Count 12 asserts claims of breach of fiduciary duty against certain Licensees. Id. at 52-53, ¶¶ 221-25.

In addition to the Estate Claims and the Investor Assigned Claims mentioned above, plaintiffs make constructive trust claims apparently against all defendants (this time described as Master Licensees), and a request for recovery of attorney's fees and costs, again apparently against all defendants (as Master

---

[11]The headings in the Complaint for Counts 10, 11, and 12 all say that the counts are "Against Certain Licensees." Adv. Doc. 162 at 51-52. The nearest plaintiffs come to identifying the "Certain Licensees" is to say in a footnote to the Count 10 heading that "[a]ttached hereto as Exhibit 5 is a chart detailing the association and relationship between Licensees and Investors with regard to sales to specific investors. Exhibit 6 is a chart detailing the association and relationship between Licensees and their respective Master Licensees." Id. at 51 n.22. The footnote reference is carried forward in the headings for Counts 11 and 12. Id. at 52 nn. 23 & 24. Exhibit 5 is a 344-page document listing what it describes as "Direct-Contact Licensees" and what appear to be thousands of names under the heading "Investor(s)." Adv. Doc. 162-5. Exhibit 6 is a 65-page document listing "Master Licensees," "Sub-Licensee[s]," and "Sub-Licensee Alias[es]." Adv. Doc. 162-6. The Complaint contains no explanation as to why these references are made or are helpful.

Licensees), pursuant to the authority of section 24.013 of the Texas Business and Commerce Code.[12] Id. at 53-54, ¶¶ 226-30.

## II.

### Main Grounds of the Motions to Dismiss

The grounds for dismissal most frequently asserted in the motions to dismiss are the failures of plaintiffs to satisfy the pleading standards of Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure. Those grounds are discussed in a general way under this heading.

A.   The Rule 8(a)(2) Pleading Standards

Rule 7008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") makes Rule 8 of the Federal Rules of Civil Procedure applicable to adversary proceedings. Rule 8(a)(2) provides the standard of pleading for a complaint. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).

---

[12]Plaintiffs also alleged entitlement to attorney's fees and costs against defendants pursuant to section 38.001 of the Texas Civil Practice and Remedies Code by virtue of defendants' breach of contract. Adv. Doc. 162 at 54, ¶ 230. The court considers that the section 38.001 claim is no longer in the case because of plaintiffs' abandonment of their breach of contract claims.

Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. <u>Twombly</u>, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. <u>Id.</u> To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. <u>Twombly</u>, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

In the testing of the adequacy of allegations under Rule 8(a), any reference by a plaintiff to defendants collectively in a complaint fails to satisfy the pleading standards of Rule 8(a).

See <u>Griggs v. State Farm Lloyds</u>, 181 F.3d 694, 699 (5th Cir. 1999); <u>see also</u> <u>Searcy v. Knight (In re Am. Int'l Refinery)</u>, 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

B.    <u>Rule 9(b) Standards for the Pleading of Claims Based on Fraud</u>

Rule 7009 of the Bankruptcy Rules makes Rule 9(b) of the Federal Rules of Civil Procedure applicable to adversary proceedings.  Rule 9(b) applies to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.  <u>Frith v. Guardian Life Ins. Co. of Am.</u>, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).  Claims alleging violations of the Texas Insurance Code and the Texas DTPA as well as those for fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b).  <u>Berry v. Indianapolis Life Ins. Co.</u>, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); <u>Frith</u>, 9 F. Supp. 2d at 742.  In other words, all claims that have fraudulent conduct as an element are subject to the Rule 9(b) pleading standards.  See <u>Lone Star Fund V (U.S.), LP v. Barclays Bank PLC</u>, 594 F.3d 383, 387 n.3 (5th Cir. 2010); <u>see also</u> <u>Berry</u>, 608 F. Supp. 2d at 799; <u>In re Am. Int'l Refinery</u>, 402 B.R. at 737; <u>Ingalls v. Edgewater Private Equity Fund III, L.P.</u>, No. CIV. A. H-05-1392, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005); <u>Tigue Inv. Co.,</u>

<u>Ltd. v. Chase Bank of Tex., N.A.</u>, No. 3:03-CV-2490-N, 2004 WL 3170789, at *1-*2 (N.D. Tex. Nov. 15, 2004).

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." <u>Herrmann Holdings Ltd. v. Lucent Techs. Inc.</u>, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks and citations omitted). To satisfy this requirement, plaintiffs must identify in the Complaint "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." <u>See Tuchman v. DCS Commc'ns Corp.</u>, 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks and brackets omitted); <u>see also Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333, 339 (5th Cir. 2008).

In <u>Ackerman v. Northwestern Mutual Life Insurance Co.</u>, 172 F.3d 467, 469 (7th Cir. 1999), the court provided an explanation of the defensible purpose of the heightened pleading requirement of Rule 9(b) by saying that it served "to force the plaintiff to do more than the usual investigation before filing his complaint." <u>Id.</u> The rationale behind Rule 9(b) is that "[f]raud charges can seriously damage a defendant's reputation,

even when the claim is ultimately defeated." <u>Tigue Inv. Co., Ltd.</u>, 2004 WL 3170789, at *2.

"General allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another cannot meet the requirements of Rule 9(b)." <u>Id.</u> at *1 (brackets, internal quotation marks, and citations omitted). <u>See also</u> <u>Ingalls</u>, 2005 WL 2647962, at *5 (quoting from <u>Glaser v. Enzo Biochem, Inc.</u>, 303 F. Supp. 2d 724, 734 (E.D. Va. 2003)(that group pleading does not satisfy the who, what, where, why, and when required by 9(b), and that, instead, specificity is required for each defendant)); <u>In re Am. Int'l Refinery</u>, 402 B.R. at 738 (stating that "[t]he allegations in the Complaint that refer to Defendants collectively do not satisfy the heightened pleading standards of Rule 9(b)").

The Rule 9(b) standards apply as to each defendant even when hundreds of similarly situated defendants are named. <u>See</u> <u>Ackerman</u>, 172 F.3d at 470-71 (stating, in the context of a multiple-plaintiff lawsuit, that "[o]f course . . . compliance with Rule 9(b) is burdensome. But you cannot get around the requirements of the rule just by joining a lot of separate cases into one.").

Analysis

As disclosed below in the discussions of the counts of the Complaint, the court has adopted recommendations of the bankruptcy judge that the allegations of certain counts fail to comply with the pleading standards of the Federal Rules of Civil Procedure, with the result that the inadequately pleaded claims are to be dismissed. As to the other claims, the court has concluded from the court's independent evaluation of the merits of the grounds of the motions to dismiss that all claims asserted by plaintiffs in the Complaint are insufficiently pleaded, that some are rendered moot because of insufficient pleading of predicate claims, and that all claims should be dismissed. With one exception,[13] the court finds no reason to address recommendations of the bankruptcy judge that bear on issues unrelated to the reasons for dismissal discussed in this memorandum opinion and order.

For the sake of consistency, the court is giving all defendants the benefit of the court's rulings, even if the ruling is based on a ground not asserted by a defendant in a motion to dismiss. Plaintiffs have had ample opportunity to fully respond to all of the grounds that have led to the court's decision to

---

[13]The exception is the discussion in footnote 16 on page 26.

dismiss all claims; and, it would be inappropriate to leave claims pending against some of the defendants who, because of lack of resources or for other reason, were unable or failed to file a full motion to dismiss. The grounds the court has found meritorious apply to all defendants. See, supra, n.7.

A.    The Count 1 and Count 3 Claims

Count 1 sets forth a claim for actual fraudulent transfer under section 24.005(a)(1) of the Texas Business & Commerce Code, asserted through 11 U.S.C. § 544(b)(1).  Section 24.005(a)(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor . . .

Elements of fraudulent transfer under Texas law are: (1) a creditor, (2) debtor, (3) debtor transferred assets shortly before or after the creditor's claim arose, (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors.  Nwokedi v. Unlimited Restoration Specialists, Inc., 428 S.W.3d 191, 203 (Tex. App.-Houston [1st Dist.] 2014, pet. denied).

Count 3 sets forth claims for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A). The language of § 548(a)(1)(A) is substantially similar to the language recited under Count 1 regarding fraudulent transfer with actual intent to defraud. The court is satisfied that the same pleading standard applies to these counts.

The court agrees with the bankruptcy judge's report that the allegations in Counts 1 and 3 fail to comply with the Rule 8(a) standards. Doc. 32-1 at 11, 14-15. The allegations do not identify the transferor or any particular transferee; nor is there any allegation of the amount paid by the transferor to a particular transferee. The Count 1 and Count 3 allegations simply do not allege facts from which the conclusion can be reached that plaintiffs have stated a plausible fraudulent transfer claim against any particular defendant.

Moreover, a ground asserted by some defendants in similar adversary proceedings for dismissal of Count 1 focuses on the requirement that a trustee can bring an action under § 544(b) only if there is a "triggering" unsecured creditor that could have brought such an action when the bankruptcy petition was filed. U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc., 479 B.R. 405, 410 (N.D. Tex. 2012). They urge that plaintiffs have not identified such a triggering creditor and that, as a consequence,

Count 1 must be dismissed. In this regard, the court agrees.
Although the consensus appears to be that the trustee need not
specifically name the triggering creditor, the cases make clear
that facts must be pleaded sufficient to identify at least the
class or categories of creditors that could assert a fraudulent
transfer claim. See Askanase v. Fatjo, No. H-91-3140, 1993 WL
208682, at *4 (S.D. Tex. Apr. 22, 1993)(trustee must establish
the existence of an allowed claim that could have been avoided);
Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding
Corp.), 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008)(naming the
categories of triggering creditors).

Here, plaintiffs simply make the conclusory statement that
"Life Partners' creditors, or the Investors, could have brought
the state law fraudulent transfer claims now asserted." Adv. Doc.
447 at 40, ¶ 117. Plaintiffs do not plead that the investors are
unsecured creditors so as to meet the requirement of § 544(b).
Identifying in some way the triggering creditors would have been
easy enough. The reference to "Life Partners' creditors, or the
Investors" is simply too amorphous, especially given that there
are several debtors and the bankruptcy petitions were filed at
different times. See U.S. Bank, 479 B.R. at 413; Adelphia
Recovery Tr. v Bank of Am., N.A., 390 B.R. 80, 94 (S.D.N.Y.
2008), aff'd, 379 F. App'x 10 (2d Cir. 2010); Doc. 32-1 at 11

(noting that the bankruptcy cases were not substantively consolidated).

As the bankruptcy judge notes, plaintiffs do not allege which debtors made which fraudulent transfers to which defendants. Doc. 32-1 at 11. See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc., 817 F. Supp. 2d 934, 940-41 (N.D. Tex. 2011)(fraudulent transfer sufficiently pleaded when plaintiff identified the date of transfers, the amount of each, and the consideration, if any, received as to each debtor/transferor); Janvey v. Stinson, No. 3:10-CV-2586-N, 2013 WL 2948085, at *5 (N.D. Tex. June 14, 2013)(pleading sufficient where it apprised defendant of sufficiently substantial amount of particularized information about claim to enable defendant to understand it and effectively prepare a responsive pleading and overall defense); Airport Blvd. Apts., Ltd. v. NE 40 Partners, Ltd. P'ship (In re NE 40 Partners, Ltd. P'ship), 440 B.R. 124 (Bankr. S.D. Tex. 2010)(discussing requirement of pleading specifically and the tools of the trustee to fully investigate claims before asserting them).

With regard to the applicability of the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure to Counts 1 and 3, the court disagrees with the bankruptcy judge. Clearly, counts that involve claims of actual fraud, such as

Counts 1 and 3, invoke the heightened pleading requirements of Rule 9(b). See Guffy v. Brown (In re Brown Medical Center, Inc.), 552 B.R. 165, 168 (S.D. Tex. 2016); O'Cheskey v. CitiGroup Global Markets, Inc. (In re American Housing Found.), 543 B.R. 245, 264-65 (Bankr. N.D. Tex. 2015); Crescent Res. Litig. Tr. v. Nexen Pruet, L.L.C. (In re Crescent Res., L.L.C.), Adv. No. 11-01082-CAG, 2012 WL 195528, at *7 (Bankr. W.D. Tex. Jan. 23, 2012). And, it is the debtors' intent at the time of the conveyances that is critical. Roland v. United States, 838 F.2d 1400, 1402 (5th Cir. 1988). Counts 1 and 3 do not contain any specificity as to the "who, what, when, where, and how" of the alleged fraudulent conduct of debtors showing that they intended to defraud creditors by paying commissions to defendants. More than conclusory allegations are necessary to show that each transfer was made with the intent to defraud creditors.

Plaintiffs have not pleaded any of the facts necessary to plausibly show entitlement to relief as to these counts.

B.    The Count 2 and Count 4 Claims

Count 2 sets forth a claim for constructive fraudulent transfer under section 24.005(a)(2) of the Texas Business & Commerce Code, asserted through 11 U.S.C. § 544. Section 24.005(a)(2) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's

claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transactions; or
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

The elements are the same as for count 1, except that instead of proving actual intent to defraud, plaintiffs would have to prove that the debtor, without receiving reasonably equivalent value in exchange for the transfer, engaged in a transaction for which its remaining assets were unreasonably small or it intended to incur debts beyond its ability to pay as they became due.

Count 4 sets forth claims for fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). The language of § 548(a)(1)(B) is substantially similar to the language recited under Count 2. The court is satisfied that the same pleading standard applies to these counts.

Again, the court agrees with the bankruptcy judge's report that the allegations in Count 2 and Count 4 fail to comply with

the Rule 8(a) standards.[14] Doc. 32-1 at 12-15. As before, the allegations do not identify the transferor or any particular transferee; nor is there any allegation of the amount paid by the transferor to a particular transferee, much less information as to why the value of the particular consideration was less than the amount transferred. Nor are any facts pleaded to support the debtors' insolvency at the time of each transfer. Allegations that merely mirror the elements set forth in the statute are insufficient. <u>Crescent Res.</u>, 2012 WL 195528, at *8.

As in Count 1, plaintiffs have failed to identify in Count 2 a triggering unsecured creditor that could have brought the claim when the bankruptcy petitions were filed. <u>U.S. Bank</u>, 479 B.R. at 410.

The Complaint simply does not allege facts from which the conclusion can be reached that plaintiffs have stated a plausible claim against any particular defendant for constructive fraudulent transfer under state or bankruptcy law. Though they repeatedly make conclusory allegations, e.g., that debtors were "perpetually insolvent" and "insolvent from the beginning," Adv. Doc. 162 at 37, ¶ 134; 44, ¶ 159, the facts they have alleged

_____

[14]Whether the Rule 9(b) pleading requirements apply is a closer question, with some cases indicating that it does, <u>see e.g.</u>, <u>NE 40 Partners</u>, 440 B.R. at 129; <u>Walker v. Pasteur (In re Aphton Corp.)</u>, 423 B.R. 76, 88 (Bankr. D. Del. 2010), and some that it does not, <u>see, e.g.</u>, <u>American Housing Found.</u>, 543 B.R. at 264; <u>Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)</u>, 529 B.R. 147, 197 (Bankr. W.D. Tex. 2015). Inasmuch as the allegations of Counts 2 and 4 fail to meet the requirements of Rule 8(a), the court need not decide whether Rule 9(b) applies to these claims.

show that debtors were awash in cash, e.g., debtors "raised more than $1.8 billion," id. at 17, ¶80, and purchased life insurance policies "on a wholesale basis" while selling them for "grossly overpriced" amounts, id. at 18, ¶¶ 83-84. And, while defendants (assuming they are the subject of the reference to "Defendant Licensees") "received over $48 million in commissions and fees," id, at 30, ¶ 116, they "on average received approximately 12% of the total investment dollars," id. at 33, ¶ 120.

C.   The Count 5 Claims

Count 5 asserts preference claims brought pursuant to 11 U.S.C. § 547 against certain unidentified licensees shown on Exhibit 4 to the Complaint. To state a claim for preferential transfer, a plaintiff must plead that the transfer of an interest in the debtor's property was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such a transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-
>> (A) within 90 days before the date of the filing of the petition; or
>> (B) [] within one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) [such that the] payment enables such creditor to receive more than such creditor would if--
>> (A) the case were a case under Chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

<u>Crescent Res.</u>, 2012 WL 195528, at *5.

As noted by the bankruptcy judge, plaintiffs fail to even identify which defendants allegedly received preferences. They do not identify the debtor making the transfer to which licensee on what particular date. Doc. 32-1 at 16-17. Count 5 does not allege sufficient facts to plausibly state any claim for preferential transfer.

D.  <u>The Count 6 Claims</u>

Count 6 asserts claims against certain licensees for recovery of all avoided transfers (described in Counts 1-5), as authorized by 11 U.S.C. § 550. Thus, for Count 6 to be viable, any of Counts 1-5 must also be viable. And, for the reasons discussed, none of them are sufficiently pleaded to survive dismissal. Therefore, Count 6 must likewise be dismissed.

E.  <u>The Count 7 Claims</u>

Count 7 asserts breach of contract claims. Plaintiffs have represented that they will voluntarily withdraw these claims. The court accepts the recommendation of the bankruptcy judge that Count 7 be dismissed. Doc. 32-1 at 17-18.

F.  <u>The Count 8 Claims</u>

In Count 8, plaintiffs seek to equitably subordinate defendants' claims to the claims of all other stakeholders pursuant to 11 U.S.C. § 510(c). The Fifth Circuit applies a

three-prong test for equitable subordination: (1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in harm to the creditors of the bankrupt or conferred an unfair advantage upon the claimant; and (3) equitable subordination must not be inconsistent with the provisions of the Bankruptcy Code. Wooley v. Faulkner (In re SI Restructuring, Inc.), 532 F.3d 355, 360 (5th Cir. 2008). Equitable subordination is ordinarily employed in only three typical cases: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.), 119 F.3d 349, 357 (5th Cir. 1997).

In this case, plaintiffs have not pleaded that defendants are fiduciaries of the debtors. Nor are they alleged to have controlled the debtors to the disadvantage of other creditors. Nor is there any allegation that any defendant actually defrauded another creditor of any debtor. Plaintiffs simply have not pleaded facts to support an equitable subordination claim against any defendant. In sum, equitable subordination is an unusual remedy to be applied in limited circumstances. Margaux Tex.

_Ventures, Inc. v. Cooper (In re Margaux Tex. Ventures, Inc.)_, 545
B.R. 506, 514 (Bankr. N.D. Tex. 2014)(citing cases). This is not
such a case.

G.    The Count 9 Claims

In Count 9, plaintiffs seek to disallow claims of licensees
pursuant to 11 U.S.C. § 502(d). That section provides, in
pertinent part: "the court shall disallow any claim of any entity
from which property is recoverable under section 542, 543, 550,
or 553 of this title or that is a transferee of a transfer
avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549,
or 724(a) of this title." Inasmuch as plaintiffs have failed to
state any claims that may be pursued under the referenced
statutes, the claims of Count 9 must be dismissed.

H.    The Count 10 Claims

The court has concluded that plaintiffs' Count 10 claims of
negligent misrepresentation are deficient because of plaintiffs'
failure to satisfy the pleading requirements of Rule 8(a)(2) and
of Rule 9(b).

The elements of a claim for negligent misrepresentation are:
(1) a representation is made by a defendant in the course of his
business or in a transaction in which he has a pecuniary
interest; (2) the defendant supplied false information for the
guidance of others in their business; (3) the defendant did not

exercise reasonable care or competence in obtaining, or communicating, the information; and, (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. Federal Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).

It is impossible to tell how many sales are the subject of Count 10.[15] Plaintiffs failed to allege the required factual specificity as to any transaction. There is no way to determine from plaintiffs' general, conclusory allegations the facts upon which they rely for recovery against any defendant as to any particular transaction. The Complaint does not contain an allegation of any fact concerning the conduct of a particular defendant but always refers collectively to all, or "certain," of the defendants (or "Master Licensees" or even "Licensees Masters"). Adv. Doc. 162 at 51, ¶ 214. That shortcoming, standing alone, causes the allegations to fail the Rule 8(a) pleading standards.

Moreover, there is no allegation of any representation made by any identified defendant or concerning the circumstances under which any defendant made any representation; nor is there any

---

[15]While the Count 10 heading indicates that the negligent misrepresentation claims are against only "Certain Licensees," Adv. Doc. 162 at 51, there is nothing in the Complaint that identifies those "Certain Licensees." As previously noted, plaintiffs define the term "Licensees" to include Master Licensees and Referring Licensees. Id. at 4, n.1. But, in describing the negligent misrepresentation claims, plaintiffs say that the "Licensees acted as agents of the Master Licensees." Id. at 51, ¶ 215.

allegation of the kind of information any identified defendant provided to any person or any reason why any defendant supplied any information to any person. Nor does the Complaint contain any allegation that would support a conclusion that any identified defendant failed to exercise reasonable care or competence in obtaining, or communicating, any information. Nor is there any allegation that any identified recipient of any information supplied by any defendant justifiably relied on the information, much less that any such recipient suffered any pecuniary loss by relying on such information. Plaintiffs' Count 10 claims cannot survive a motion to dismiss for failure to state a claim because no facts are alleged that would allow the court to infer that plaintiffs' alleged right to relief against any of the defendants is plausible.

Therefore, the court concurs with the bankruptcy judge's conclusion that plaintiffs' Count 10 allegations do not satisfy Rule 8(a)'s pleading requirements; and, the court adopts that conclusion and the bankruptcy judge's further conclusion that the pleading burden of complying with Texas law and Rule 8(a)[16] does

---

[16]The only objection made by plaintiffs to the bankruptcy judge's report and recommendation was directed to the bankruptcy judge's conclusion that the duty element of the negligent misrepresentation claim requires a special relationship between the parties. Doc. 34 at 1, 5-6. The court agrees with plaintiffs' objection. See Fed. Land Bank v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991); see also In re Soporex, Inc., 446 B.R. 750, 781 (Bankr. N.D. Tex. 2011). Nevertheless, Count 10 is subject to dismissal by reason of the Rule 8(a) and Rule 9(b) deficiencies mentioned in the text.

not excuse plaintiffs from meeting the Rule 8(a) pleading standards.  See Doc. 32-1 at 20-23.

The court disagrees with what appears to be a conclusion reached by the bankruptcy judge that Rule 9(b) is not applicable to plaintiffs' Count 10 claims.  See Doc. 32-1 at 32.  The Complaint is replete with allegations that licensees made false and fraudulent representations to the investors.  See Adv. Doc. 162 at 3-4, ¶ 3; 29-30, ¶¶ 113 & 115; 31, ¶ 118; 35-36, ¶ 130; 38, ¶ 137; 46, ¶ 174; 51, ¶ 213.  Those allegations are so intertwined with other allegations related to the alleged inappropriate conduct of the licensees as to clearly invoke the Rule 9(b) requirement that plaintiffs must allege the particulars of the time, place, and contents of the alleged false representations, as well as the identity of the person making the representation and what that person obtained thereby. Plaintiffs' failure to satisfy that pleading standard as to any defendant provides yet another reason why dismissal of the Count 10 claims is appropriate.

I.   The Count 11 Claims

The Count 11 allegations do not identify the defendants who allegedly committed a breach of the Texas Securities Act other than to say that "certain Master Licensee Defendants offered to sell these securities, while being unlicensed brokers engaged in

the sale of unregistered securities." Adv. Doc. 162 at 52, ¶ 219. That allegation is immediately followed by the allegation that "[c]onsequently, those Master Licensee Defendants have violated the Texas Securities Act and are liable to their specific Investors for either rescission, or damages in the minimum amount of their investment." Id. And, as in Count 10, plaintiffs make the anomalous allegation that "Licensees" had been recruited by "Master Licensees" and "operated as their agents," id. at 52, ¶ 220, whereas the term "Licensee" has already been defined to include "Master Licensees." Id. at 4, n.1. Plaintiffs fail to satisfy the Rule 8(a) pleading standards by failing to identify the defendants who allegedly engaged in the conduct about which plaintiffs complain or the investors to which the complaint applies. Nor is there any suggestion in the allegations as to which of the defendants in this action are claimed to be unlicensed brokers engaged in the sale of unregistered securities.[17] Those shortcomings alone cause Count 11 to be subject to dismissal.

Added to those shortcomings are the failure of plaintiffs in Count 11 to identify the investors who might have a claim for rescission as distinguished from those who might have a claim for

---

[17]Plaintiffs admit that the investments at issue were not even determined to be securities until after the bankruptcy filing. Adv. Doc. 162 at 35 n.19.

28

damages. There is no way to determine from the allegations in Count 11 which investors continue to own the securities and which no longer own them. As a result, the reader of the Complaint has no way of knowing which of the investors might be claiming damages from a defendant or defendants.

The bankruptcy judge concluded in his report and recommendation that Count 11 contained overly-broad allegations that included claims that are barred by limitations. Doc. 32-1 at 32-33. For that reason, the bankruptcy judge recommended that the court "grant the motions to dismiss count 11 with prejudice as to transactions occurring before March 6, 2014." Id. at 33. The court agrees that the Count 11 allegations have that shortcoming, so, in that sense, the court adopts the recommendation of the bankruptcy judge; but, the court has concluded that all claims in Count 11 should be dismissed for the reasons given above.

J.   The Count 12 Claims

The heading in the Complaint for Count 12 shows that it is against only "Certain Licensees." Adv. Doc. 162 at 52. For that reason alone, Count 12 is subject to dismissal for failure to comply with the Rule 8(a) pleading standards. The bankruptcy judge recommended dismissal of Count 12 because of the failure of the trustee to plead facts that give rise to a fiduciary

relationship.  This court agrees with that recommendation, and adopts it.  There are other reasons why dismissal would be appropriate, but the court does not consider that there is a need to discuss all of them.  However, the court does add that the allegations of Count 12 (that "the Master Licensees misrepresented material facts to the investors") cause Rule 9(b) to be applicable.  Plaintiffs' failure to comply with the Rule 9(b) pleading standards, <u>supra</u> at 9-11, provides another reason why the Count 12 claims must be dismissed.

K.    The Constructive Trust Claims

The bankruptcy judge recommended in his report and recommendation that the motions to dismiss the constructive trust claims be denied. Doc. 32-1 at 37. However, the constructive trust claims must fail for the same reasons the Count 12 claims fail. The elements required to impose a constructive trust are: (1) breach of a fiduciary relationship or actual fraud; (2) unjust enrichment of the defendant; and (3) tracing the funds to an identifiable <u>res</u>. <u>Haber Oil Co. v. Swinehart (In re Haber Oil Co.)</u>, 12 F.3d 426, 437 (5th Cir. 1994); <u>In re Monnig's Dept. Stores, Inc.</u>, 929 F.2d 197, 201 (5th Cir. 1991). Plaintiffs have not pleaded facts to establish a fiduciary relationship or actual fraud. Nor have they identified property that can be traced back to the original property allegedly acquired by fraud. <u>In re</u>

<u>Monnig's</u>, 929 F.2d at 201. Accordingly, the constructive trust claims must be dismissed.

IV.

<u>The Court is Not Permitting Repleading</u>

The court is not accepting the recommendation made from time to time by the bankruptcy judge that plaintiffs be permitted to replead as to certain issues or as to certain defendants.

The conclusions of this court that the allegations of the Complaint are deficient cannot possibly come as a surprise to plaintiffs. The initial complaint in the adversary action was filed December 29, 2015, Adv. Doc. 1, and the first amended complaint was filed March 11, 2016, Adv. Doc. 60. Defendants in this and other related adversary proceedings filed motions to dismiss, alerting plaintiffs to the inadequacies of the their pleadings. Indeed, the bankruptcy court twice abated the proceedings before the second amended complaint was filed in part to give plaintiffs an opportunity to again amend their pleadings, undoubtedly knowing that defendants were going to insist on strict compliance with applicable pleading standards as to any claims that might be alleged. Adv. Docs. 148, 154. Plaintiffs cannot complain that they did not have time to gather the

requisite knowledge to plead specifically.[18] See <u>NE 40 Partners</u>,

440 B.R. at 128 (trustee has many tools to enable him to gather

information). When plaintiffs filed the second amended complaint

on March 6, 2017, defendants again filed motions to dismiss

notifying plaintiffs of specific deficiencies. Yet plaintiffs did

not seek leave to further amend their complaint.

As the Fifth Circuit has noted:

> At some point a court must decide that a plaintiff has
> had fair opportunity to make his case; if, after that
> time, a cause of action has not been established, the
> court should finally dismiss the suit.

<u>Hermann Holdings, Ltd.</u>, 302 F.3d at 567 (quoting <u>Jacquez v.</u>

<u>Procunier</u>, 801 F.2d 789, 793 (5th Cir. 1986)). That point has

been reached in this action. The court has decided that

plaintiffs have had a fair opportunity to make their case, and

that the time has come for the court to finally dismiss the suit.

Undoubtedly, plaintiffs know that they have done the best

they can do. They have not sought leave to file an amended

pleading after their Complaint; nor have they ever suggested that

they would be able to overcome their pleading deficiencies if

given an opportunity to do so.[19] Defendants have exhausted enough

---

[18]Plaintiffs have pleaded that immediately upon the Chapter 11 Trustee's appointment (in March 2015), he launched an investigation into debtors' practices and within about six weeks produced a detailed report. Adv. Doc. 162 at 11, ¶ 52; 20, ¶ 89; 21-22, ¶ 90 (listing evidence accumulated). The Trustee has had more than 2 1/2 years to assemble the facts needed to pursue the claims asserted here.

[19]In their response to other objections, filed November 6, 2017, plaintiffs have offered to file
(continued...)

resources in response to the inadequately pleaded complaints of plaintiffs without be called upon to go another round. Therefore, the court is not permitting plaintiffs to replead.

V.

Conclusion and Order

For the reasons stated above, the court concludes that all claims asserted by plaintiffs against the defendants in this action should be dismissed with prejudice. Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiffs against the defendants in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED November 17, 2017.

_____
JOHN McBRYDE
United States District Judge

---

[19](...continued)
"amended charts" (referring to the exhibits to the Complaint). Doc. 37 at 8; Doc. 38 at 8. They have not sought leave to file amended charts; nor have they provided any indication of what further detail would be provided or how the amended charts could possibly resolve the numerous pleading deficiencies under Fed. R. Civ. P. 8(a) and 9(b).